MISSOURI, K. & T. R. CO. et al. v. INTERSTATE COMMERCE COMMISSION.

(Circuit Court, E. D. Missouri. October 23, 1908.)

No. 5,646.

1. CONSTITUTIONAL LAW (§ 298*)—DUE PROCESS OF LAW—JUST COMPENSATION —REGULATION OF RAILROAD RATES IN INTERSTATE COMMERCE.

Neither Congress nor any legislative or administrative board acting by its authorization can competently establish rates for the transportation of property in interstate commerce that will not admit of the carrier earning such compensation for the service rendered as under all the circumstances is just and reasonable, since such action would deprive it of its property without due process of law, and would be a taking of its property for public use without just compensation, in violation of the fifth amendment to the Constitution.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 847; Dec. Dig. § 298.*

Interference with interstate or foreign commerce, see note to McCanna & Frazer Co. v. Citizens' Trust & Surety Co. of Philadelphia, 24 C. C. A. 13.]

2. CONSTITUTIONAL LAW (§ 67*) — JUDICIAL POWERS — REASONABLENESS OF RAILROAD RATES.

Power to determine and prescribe what are just and reasonable maximum rates to be charged in interstate commerce is in a limited way conferred on the Interstate Commerce Commission by section 15 of the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 384 [U. S. Comp. St. 1901, p. 3165], as amended by Act June 29, 1906, c. 3591, § 4, 34 Stat. 589 [U. S. Comp. St. Supp. p. 900]); but as the commission acts only as a legislative or administrative board, and not judicially, its determination or action does not and cannot preclude judicial inquiry into the justness and reasonableness of the rates within the constitutional guaranty.

[Ed. Note.—For other cases, see Constitutional Law, Dec. Dig. § 67.*]

3. CARRIERS (§ 26*)—RATES PRESCRIBED BY INTERSTATE COMMERCE COMMISSION —REQUISITES TO LEGALITY.

Maximum rates prescribed by the Interstate Commerce Commission, to be just and reasonable within the constitutional limitation, must have reasonable regard for the cost to the carrier of the service rendered and the value of the property employed therein, and also reasonable regard for the value of the service to the public; and where the cost to the carrier is not kept within reasonable limits, or for any reason its business cannot reasonably be so conducted as to render it profitable, the misfortune must fall upon the carrier.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 26.*]

4. CARRIERS (§ 32*)—RATES PRESCRIBED BY INTERSTATE COMMERCE COMMISSION —REQUISITES TO LEGALITY.

Rates prescribed by the Interstate Commerce Commission under the statute are not only required to be just and reasonable within the constitutional guaranty, but they must also not be unjustly discriminatory nor unduly preferential.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 32.*]

5. COMMERCE (§ 91*)—JUDICIAL REVIEW OF ORDERS OF INTERSTATE COMMERCE COMMISSION—SCOPE OF INQUIRY.

Sections 15 and 16 of the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 384 [U. S. Comp. St. 1901, p. 3165], as amended by Act June 29, 1906, c. 3591, §§ 4, 5, 34 Stat. 589, 590 [U. S. Comp. St. Supp. 1907, pp. 900, 902]) confer on the Circuit Courts, sitting in equity, jurisdiction to entertain, hear, and determine suits to compel obedience to orders of the commission prescribing rates, and also of suits to annul or enjoin the enforcement of such orders. The scope of the inquiry in both classes of suits is the same, and the court is not confined to a consideration of the sufficiency of the facts as determined by the commission to sustain the order, but the hearing may be de novo, and may include the taking and consideration of evidence other than that before the commission; but the presumption is that the order is valid, and the burden is upon the party attacking it to make a clear case showing its invalidity.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 91.*]

In Equity. On motion for preliminary injunction.

W. D. McHugh and J. W. Terry, for complainants.
P. J. Farrell and S. H. Cowan, for defendant.
Before VAN DEVANTER, HOOK, and ADAMS, Circuit Judges.

PER CURIAM. This is a suit in equity against the Interstate Commerce Commission by 49 railway companies and the receivers of 2 other railway companies to annul and enjoin the enforcement of an order of the commission requiring the railway companies to desist from exacting a terminal charge of $2 per car for the delivery of

live stock at the Union Stockyards, in Chicago, Ill., as respects shipments originating outside that state, and prescribing a maximum charge of $1 per car for such terminal service, and also requiring the railway companies to desist from exacting the present through rates for transporting cattle in car loads from designated points in the Southwest to certain Northern ranges and to Chicago, Ill., National Stockyards, Ill., East St. Louis, Ill., St. Louis, Mo., St. Joseph, Mo., Kansas City, Mo., New Orleans, La., Omaha, Neb., and South Omaha, Neb., and prescribing for such through service certain maximum rates which are lower than the present ones. In the bill the order is assailed upon the grounds that both the terminal charge and the through rates prescribed therein are unreasonably low, noncompensatory, and confiscatory, and that the through rates are unjustly discriminatory and unduly preferential, in that they cannot be enforced without necessarily giving an undue and unreasonable preference and advantage to shippers of cattle and to cattle traffic, and also subjecting other shippers and other classes of traffic to a corresponding prejudice and disadvantage.

The matter for instant consideration is an application for a preliminary injunction suspending the enforcement of the order until the final hearing, and this application has been submitted upon the bill, the answer, divers affidavits, and some other written and printed proofs. It is conceded that the order was made by the commission upon a sufficient complaint, after due notice thereof to each of the railway companies and after a full hearing, in which they made a showing of substantially everything that they rely upon here. See Cattle Raisers' Ass'n of Texas v. Missouri, Kansas & Texas Ry. Co., 11 Interst. Com. R. 296, s. c. 13 Interst. Com. R. 418. Shortly before the order was made, a preliminary injunction, suspending the enforcement of an earlier order containing a substantially identical requirement respecting the terminal charge at Chicago, had been granted by the Circuit Court of the United States for the District of Minnesota, after due notice and a full hearing, in a suit brought against the commission by several of the present complainants. That injunction was in full force when the order now before us was made (July 6, 1908) and served upon the railway companies (September 9, 1908), and it is still in full force. Because of this we felt constrained to suggest that the repetition of the prior order in the later one was a violation of the preliminary injunction in the other suit, and thereupon the commission, which seems not to have considered the matter in that aspect before, promptly rescinded so much of the later order as relates to the terminal charge. It will therefore be dismissed from further consideration.

We do not stop to enumerate the various contentions advanced by counsel in respect of questions pertaining to the through rates, but proceed to state briefly the conclusions at which we have unanimously arrived respecting the rules of law applicable to the case as now presented and respecting the proper disposition, upon the proofs submitted, of the application for a preliminary injunction.

1. Neither Congress nor any legislative or administrative board act-

ing by its authorization can competently establish rates for the transportation of property in interstate commerce that will not admit of the carrier earning such compensation for the service rendered as under all the circumstances is just and reasonable to it and to the public, for that would be depriving the carrier of its property without due process of law, and would be taking its property for public use without just compensation, in violation of the fifth amendment to the Constitution.

2. Power to determine and prescribe what are just and reasonable maximum rates to be charged in interstate commerce is, in a limited way, conferred upon the Interstate Commerce Commission by existing statute law; but as the commission acts only as a legislative or administrative board, and not judicially (Western Union Telegraph Co. v. Myatt [C. C.] 98 Fed. 335, 344), its determination or action does not, and cannot, preclude judicial inquiry into the justness and reasonableness of the rates, within the meaning of the constitutional guaranty, for that is a judicial question.

3. To be just and reasonable, within the meaning of the constitutional guaranty, the rates must be prescribed with reasonable regard for the cost to the carrier of the service rendered and for the value of the property employed therein; but this does not mean that regard is to be had only for the interests of the carrier, or that the rates must necessarily be such as to render its business profitable, for reasonable regard must also be had for the value of the service to the public. And where the cost to the carrier is not kept within reasonable limits, or where for any reason its business cannot reasonably be so conducted as to render it profitable, the misfortune must fall upon the carrier, as would be the case if it were engaged in any other line of business.

4. Reasonably interpreted, the statute, by which alone the Interstate Commerce Commission derives its power, unmistakably requires that all rates prescribed thereunder shall be just and reasonable, within the constitutional guaranty, and also that they shall not be unjustly discriminatory or unduly preferential; and these requirements plainly operate as limitations upon the power of the commission.

5. The power conferred upon the commission is at most one that is merely regulatory of existing vested rights, and is therefore quite distinguishable from the powers conferred upon the General Land Office, the Pension Office, and other like departmental bureaus; for the latter are not engaged in administering laws which are regulatory of existing vested rights, but in executing laws relating to the disposal of the public lands of the nation, to the distribution of its bounty, and to other subjects in respect of which the power of Congress is not subject to the constitutional restrictions before named, but is sufficiently comprehensive to enable it competently to devolve the execution of such laws, including the final determination of all questions of fact, upon any agency it may select for the purpose.

6. The statute under which the Interstate Commerce Commission derives its power to prescribe rates at all unequivocally recognizes, and, if there be need therefor, it plainly declares, that the Circuit Courts,

sitting in equity, are vested with jurisdiction to entertain, hear, and determine suits to compel obedience to orders of the commission prescribing rates, and also suits to annul or enjoin the enforcement of such orders. This is shown (a) by the provision in section 15 (Act Feb. 4, 1887, c. 104, 24 Stat. 384 [U. S. Comp. St. 1901, p. 3165], as amended by Act June 29, 1906, c. 3591, § 4, 34 Stat. 589 [U. S. Comp. St. Supp. 1907, p. 900]) that "all orders of the commission, except orders for the payment of money, shall take effect * * * and shall continue in force * * * not exceeding two years, * * * unless the same shall be * * * suspended or set aside by a court of competent jurisdiction"; (b) by the provision in section 16 that when any carrier fails or neglects to obey "any order of the commission, other than for the payment of money," while the same is in effect, any party injured thereby, or the commission in its own name, may apply to the Circuit Court for an enforcement of such order, and "the court shall prosecute such inquiries and make such investigations, through such means as it shall deem needful in the ascertainment of the facts at issue, or which may arise upon the hearing of such petition"; (c) by the further provision in section 16 that "the venue of suits brought in any of the Circuit Courts of the United States against the commission to enjoin, set aside, annul, or suspend any order or requirement of the commission shall be in" designated districts, "and jurisdiction to hear and determine such suits is hereby vested in such courts"; and (d) by the still further provision in section 16 that the provisions of the expedition act (Act Feb. 11, 1903, c. 544, 32 Stat. 823 [U. S. Comp. St. Supp. 1907, p. 951]) "are hereby made applicable to all such suits, including the hearing on an application for a preliminary injunction, and are also made applicable to any proceeding in equity to enforce any order or requirement of the commission." It is not conceived that the scope of the inquiry which the court is authorized to make, or the effect to be given to the commission's finding or determination upon which its order is based, is intended to be in any wise different when the suit is one to annul or enjoin the enforcement of the order than when it is one to enforce obedience thereto.

7. It is not intended that the hearing in such a suit, whether it be of the one kind or the other, shall be confined to an ascertainment of what was determined by the commission and to a consideration of the sufficiency of the facts as determined by it to sustain the order; but, on the contrary, the hearing may be de novo, and may include the taking and consideration of evidence other than that before the commission.

8. Whether, if it should appear that in the proceedings before the commission the carrier declined or neglected fairly to avail itself of the opportunity to be heard in opposition to the order, the court, in the exercise of a sound discretion, ought to refuse to grant equitable relief to the carrier upon a showing which could have been, but was not, made before the commission, and ought to require that the same be first presented to the commission for its consideration, is a question which does not arise in this case, and it is mentioned now only to indicate that it is not decided by anything said herein.

9. In approaching the consideration of a case like this the court should start with the presumption that the order is valid, and was made after a careful consideration and a correct determination of every question of fact underlying it, and it should be accorded that respect and influence which ought to attend, and does attend, the action of a legislative or administrative board, whose members are in point of ability, learning and experience specially qualified to determine such matters. In short, the burden of showing that the facts are such as to render the order invalid rests upon the carrier assailing it, and unless the case made on behalf of the carrier is a clear one the order ought to be upheld.

10. In argument reference was made to the opinion in the suit to enjoin the enforcement of the earlier order relating to the terminal charge at Chicago (Stickney et al. v. Interstate Commerce Commission, 164 Fed. 638), and it was sought to ground upon that opinion an argument somewhat in conflict with some of the conclusions herein stated; but of that it is enough to say that that opinion, when read in its entirety and with due regard to the particular facts of that case, contains nothing which is in any wise in conflict with what is here said.

11. Applying what has been said to the case now before us, we hold that we may properly inquire whether the rates in question are just and reasonable, within the meaning of the constitutional guaranty, and whether they are unjustly discriminatory or unduly preferential, within the meaning of the statute, and that we may properly consider all of the evidence submitted by the railway companies, although some of it was not before the commission. Upon the evidence submitted we find that it tends in no inconsiderable degree to sustain some of the contentions of the railway companies upon subordinate questions of fact, and that it tends in a lesser degree to sustain other contentions, but that it is clearly wanting in that certainty, fullness, and persuasive force which ought to be, and is, essential to overcome the force of the commission's finding or determination upon which the order is based.

The application for a preliminary injunction is accordingly denied.